UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**DERRICK HOOKER,**

  Plaintiff,

v.                                              **No. 4:25-cv-00287-P**

**LHOIST NORTH AMERICA
OF TEXAS, LLC,**

  Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Lhoist North America of Texas, LLC's ("Lhoist") Motion for Summary Judgment. ECF No. 49. Having considered the briefing and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Lhoist is a subsidiary of a Belgium-based company engaged in the production and sale of lime products. ECF No. 53 at 1. It operates nine terminals in Texas, where it mixes and distributes lime, and employs hundreds of semi-truck drivers to transport its products throughout the state. ECF No. 53 at 2.

Plaintiff Derrick Hooker ("Hooker"), who is Black, was interviewed and hired by his Fleer Supervisor, Jesse Ruiz ("Ruiz"). ECF No. 50 at 2. Lhoist extended Hooker an employment offer as a truck driver in August 2020. ECF No. 50 at 2. Lhoist assigned him to its McKinney, Texas, terminal. ECF No. 50 at 3. Ruiz was his supervisor during the entirety of his employment.  ECF No. 50 at 3. As a truck driver, Hooker did not have a set schedule. ECF No. 50 at 3. Instead, his shifts typically started at 4:30 a.m. and ended when there was no product left to deliver that day. ECF No. 50 at 3.

Before the first delivery of the day, pre-shift inspections are required. ECF No. 50 at 3. Lhoist spot checks to ensure these inspections are done by placing pre-trip cards on delivery trucks. ECF No. 50 at 3. The drivers are expected to locate it during their inspection of the truck and to report finding the card to Lhoist. ECF No. 50 at 3. On March 2, 2021, Hooker received a written warning for failing to complete a pre-trip inspection of his truck. ECF No. 53 at 16. This was his only written disciplinary action. ECF No. 50 at 3.

Throughout his employment, Hooker alleged that Ruiz, Warren Jones ("Jones"), and two fellow drivers, Nick and Daniel, discriminated against him. However, Hooker never heard any of them make rude, offensive, or derogatory remarks about Hooker's race. ECF No. 50 at 4.

Hooker asserted that Jones discriminated against him because he would make Hooker wash his trailer, even if it was freezing cold outside, and asked him to wash a white co-worker's truck. ECF No. 50 at 5. Hooker was on the clock and receiving pay on these occasions. ECF No. 50 at 5. On another occasion, Hooker alleges that Jones asked him to get into another truck and deliver the last load of the day after he had washed his truck, even though Hooker believed that other drivers were heading back to the terminal. ECF No. 50 at 5. Ruiz and Jones both stated that no other drivers were headed back. ECF No. 53 at 4. Hooker does not recall any other discriminatory actions taken by Jones. ECF No. 50 at 5. Hooker identified the above incident as Ruiz's one discriminatory act. ECF No. 50 at 5.

Last load deliveries were given out on a "first-come, first-serve basis." ECF No. 53 at 3. They allow drivers to work more hours and make more money. ECF No. 50 at 5. Hooker alleges that white drivers would avoid delivering the last load of the day, and Black employees delivered these disproportionately. ECF No. 50 at 6. Hooker alleges that the last load deliveries were undesirable because he would have to deal with traffic, get back late, and in the winter, it was colder and darker in the afternoons and evenings. ECF No. 50 at 6.

During his employment, Hooker made complaints about discrimination to Ruiz, Jones, and Jesse Morris, a white member of

2

management. ECF No. 50 at 8. However, he did not complain to anyone in Human Resources about discrimination. ECF No. 50 at 8. He first complained of discriminatory treatment six months into his employment. ECF No. 50 at 8. Each complaint was oral. ECF No. 50 at 8.

Hooker was employed with Lhoist until he resigned on May 19, 2022. ECF No. 53 at 6. He worked a notice period of two weeks, working his last day on June 3, 2022. allow drivers to work more hours and make more money. ECF No. 50 at 9. Hooker started his own trucking company, forming his own limited liability company before his resignation. ECF No. 50 at 9.

Hooker sued Lhoist for racial discrimination and retaliation under the Civil Rights Act of 1866, 42 U.S.C. § 1981, initiating this action on August 7, 2024. ECF No. 1. Hooker filed a First Amended Complaint on March 21, 2025, which is the live complaint in this case. ECF No. 27. After discovery, Lhoist moved for Summary Judgment on all claims on December 2, 2025. The Court now considers that motion.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to

3

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Lhoist seeks summary judgment on Hooker's race discrimination and retaliation claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### A. Section 1981 Race Discrimination Claims

Lhoist argues that Hooker cannot establish a prima facie case of race discrimination. Specifically, it contends that Hooker cannot show that he suffered an actionable adverse employment action or that he was treated less favorably than similarly situated employees outside his protected class.

A § 1981 race discrimination claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden-shifting framework. *Corp. v. Green*, 411 U.S. 792 (1973); *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 305 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016)). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of race discrimination. *Rogers*, 827 F.3d at 408. If the plaintiff does so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id*. "If the employer satisfies this burden, the presumption of discrimination drops out of the picture, and the employee must offer some evidence that" the employer's reason was pretextual, or that the plaintiff's protected characteristic was a "motivating factor" for the alleged discrimination. *Id*. (citations and internal quotations omitted).

To establish a prima facie case, Hooker must show that he (1) is a member of a protected class; (2) was qualified for the position sought; (3) suffered an adverse employment action; and (4) was replaced by

someone outside his protected class or was treated less favorably than similarly situated employees outside his class. *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

The first element is undisputed. Hooker is a Black man and thus a member of a protected class. The remaining elements are contested.

Hooker identifies five alleged adverse employment actions: (1) targeting for harassment and discipline; (2) making him work longer hours; (3) disproportionately assigning him the last load of the day; (4) holding him to harsher and more stringent standards; and (5) ignoring his complaints about race discrimination.[1]

Each of these alleged adverse actions is not actionable under § 1981. *See Hamilton v. Dall. Cty.*, 79 F.4th 494, 505 (5th Cir. 2023) (explaining that Title VII does not permit liability for de minimis workplace trifles); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 665 (N.D. Tex. 2023) (requiring more than a de minimis harm). A plaintiff must show some harm affecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis,* 601 U.S. 346, 354 (2024). In other words, the challenged action must meaningfully alter the terms of employment and injure the employee. *Fleming v. Methodist Healthcare Sys. Of San Antonio, Ltd. L.L.P.*, No. SA-21-CV01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2021).

To be actionable, Hooker must show that the actions created a disadvantageous change in an employment term or condition. He has "not established an essential element of [a] prima facie case because [he was] not subject to more than a de minimis adverse employment action." See *Sambrano* 707 F. Supp. 3d at 665. Each alleged employment action did not alter the terms or conditions of his employment. He presents no evidence that he worked fewer hours or was unable to do an aspect of

---

[1]Hooker also contends that he was subjected to a hostile work environment. However, he raises this for the first time in his Response to Lhoist's Motion for Summary Judgment. Thus, it is untimely. Further, even if it was addressed, it is not meritorious. Lhoist mentions constructive discharge as an argument put forth by Hooker. ECF No. 50 at 18. However, as this was not raised by Hooker until his Response to Lhoist's Motion for Summary Judgment, the Court does not address the arguments for the same reasons.

his job. *See id.* Hooker, therefore, fails to show he suffered an adverse employment action and to establish a prima facie case as to racial discrimination.

## B. Section 1981 Retaliation Claims

Lhoist also contends Hooker did not participate in protective activities and was not subjected to an adverse employment action.

Retaliation claims under § 1981 are also analyzed under *McDonnell Douglas. See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). To establish a prima facie case, Gooden must show that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See id.*

Hooker alleges that the same adverse employment actions above in his retaliation claim. Hooker has alleged that he complained verbally to management about "Lhoist's disparate treatment towards Black drivers." ECF No. 53 at 15. He alleges that he first complained in February 2021 and continued to "complain repeatedly." ECF No. 53 at 15. However, regardless of whether these complaints constitute protected activity, Hooker fails to establish an adverse employment action.

As mentioned above, each of the alleged adverse actions is not actionable under § 1981. *Hamilton*, 79 F.4th at 505; *Sambrano*, 707 F. Supp. 3d at 665. Hooker must show some harm affecting an identifiable term or condition of his employment. *Muldrow,* 601 U.S. at 354. He has failed to do so for the same reasons above. Hooker, therefore, fails to establish an adverse employment action and a prima facie case as to retaliation.

## CONCLUSION

For the above reasons, the Court concludes that Lhoist's Motion for Summary Judgment should be and hereby is **GRANTED**. Accordingly, Hooker's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **25th day of March 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE